**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MELISSA NIXON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-307-GLJ** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Melissa Nixon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

[1] Step one requires Claimant to establish that she is not engaged in substantial gainful activity. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

**Claimant's Background**

Claimant was forty-five years old at the time of the administrative hearing. (Tr. 30, 40). She completed tenth grade and has worked as nurse aide. (Tr. 32, 382). Claimant alleges that she has been unable to work since her application date of March 20, 2023, due to fibromyalgia, migraines, depression, anxiety, and cervical degenerative disc disease. (Tr. 382).

**Procedural History**

On March 20, 2023, Claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Michael Mannes conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated December 12, 2024. (Tr. 18-32). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. At step two, he found Claimant had the severe impairments of other and unspecified arthropathies and fibromyalgia, as well as the nonsevere impairments of GERD, migraine, obesity, and depressive, bipolar, and related disorders plus anxiety and obsessive compulsive disorders. (Tr. 20-21). He then determined Claimant did not meet a Listing at step three, including Listing 1.18. At step four, he found that Claimant had the residual functional capacity

("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except she could only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; frequently balance; and never climb ladders/ropes/scaffolds. Additionally, he limited Claimant to frequent reaching, handling, and fingering bilaterally, and that she must avoid frequent exposure to loud noise, extreme cold, humidity, unprotected heights, and dangerous moving machinery. (Tr. 22). The ALJ then concluded that although Claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e.g.*, housekeeping cleaner, mail sorter, and marker. (Tr. 34-35).

**Review**

Claimant contends that the ALJ failed to properly assess her RFC by improperly evaluating the evidence related to both her physical and mental impairments and failing to provide an appropriate narrative discussion, as well as failing to properly evaluate the evidence related to medical opinions in the record. Additionally, she asserts the ALJ failed to sufficiently develop the record and that his opinion is unsupported by substantial evidence in failing to properly consider her migraines and third-party statements from family and friends. The Court agrees with Claimant's contention as it relates to ALJ's assessment of Claimant's RFC, particularly in relation to the medical opinions in the record, and the decision of the Commissioner must therefore be reversed.

The relevant medical records as to Claimant's physical impairments reflect Claimant reported chest pain in 2023. Following a left heart angiogram, she had normal coronary arteries and it was determined her stress test had been a false positive. (Tr. 653).

Claimant nevertheless continued to report chest pain, and notes reflect suggestions of non-cardiac etiology such as her fibromyalgia, musculoskeletal pain, or GI etiologies. (Tr. 702, 1561-1582). That same year, Claimant reported chronic back pain and bilateral tingling of the hands with weakness and dropped objects, so the provider recommended and scheduled Claimant for cubital tunnel injections. (Tr. 1292-1293). Claimant also reported left shoulder pain, and underwent physical therapy to treat it. (Tr. 926-927). Claimant discontinued physical therapy after four visits, and her goals were deemed "unaddressed." (Tr. 935). In April 2024, Claimant presented to urgent care with a migraine that had been going on for four days. (Tr. 1176-1177).

On March 23, 2023, Dr. Rashad Mohamed Riazuddin, M.D., wrote a letter stating, in its entirety, "To whom it may concern, [Claimamt] has been diagnosed with Fibromyalgia and cervical degenerative disc disease that may limit her from some strenious [sic] and specific activities." (Tr. 551).

As to her mental impairments, Claimant received mental health treatment as least as far back as 2021 through the Choctaw Nation, and records reflect diagnoses of major depressive disorder, recurrent, treated with both talk therapy and medication. (Tr. 554-576). By the end of 2021, an unspecified anxiety disorder was added to her diagnoses. (Tr. 590). She continued to received treatment throughout 2022 and into 2023. (Tr. 590-630). Claimant was discharged from treatment in September 2023 after the office went 90 days without contact from her. (Tr. 689-690).

Claimant underwent several consultative examinations long before the alleged onset date in this case. On May 8, 2012, Dr. Wojciech L. Dulowski, M.D., conducted a physical

consultative examination, at which time he assessed Claimant with chronic back pain, neurologically intact, as well as depression, flat feet, and a history of migraines. (Tr. 515). His exam notes reflect largely normal findings, including that she walked slowly but had good safety and stability, she could heel/toe walk, and she had 5/5 grip strength. (Tr. 515).

On July 22, 2014, Theresa Horton, Ph.D., conducted a mental status examination of Claimant and diagnosed her with major depressive disorder, recurrent, moderate with irritability, as well as generalized anxiety disorder, and prominent dependent personality traits. (Tr. 519). She noted Claimant appeared capable of understanding, remembering, and managing mostly simple, routine, and repetitive instructions and tasks, and that she was capable of completing more complex tasks but had a very poor capacity to manage and cope with stress, which, along with a slow pace, would affect her productivity and may interfere with employment in the realm of getting along with others. (Tr. 520). However, Dr. Horton noted Claimant appeared capable of adequate adjustment in small, familiar social settings but would find adjustment in most occupational settings difficult. (Tr. 520).

On July 17, 2021, Dr. Christopher Sudduth completed a physical examination of Claimant, noting she had a normal gait and could heel/toe walk with ease and had a tandem gait, but that she was unable to squat. Claimant could stand and balance on one foot, but not hop on one foot, and she had good strength throughout. However, she met 18/18 fibromyalgia tender points, had decreased range of motion, and pain on range of motion assessment along with a positive straight leg raise test bilaterally. (Tr. 527). The decreased range of motion was in her knees bilaterally and in her back. (Tr. 527-528).

On August 9, 2021, Denise LaGrand, Psy.D., conducted a mental status evaluation of Claimant. Claimant was oriented, with normal thought processes but borderline intellectual functioning to low average range. (Tr. 537). She assessed Claimant with major depressive disorder and generalized anxiety disorder. (Tr. 537). Dr. LaGrand stated that Claimant seemed to be applying for disability based on physical factors, that Claimant reported the depression and anxiety affected her ability to work less, but that she appeared to function near the lower limit of the low average range. She noted moderate impairment in the areas of functioning, and recommended Claimant would work best in a job where complexity of tasks was learned and performed by rote with few variables and little judgment, with simple, direct, and concrete supervision. (Tr. 537-538).

On October 3, 2023, APRN Kim Sullivan conducted an SSA disability examination of Claimant, assessing Claimant with fibromyalgia, migraines, depression, anxiety disorder, and other cervical disc degeneration. (Tr. 635-636). Claimant had limited forward flexion of the lumbar spine, but could ambulate and get on and off the exam table without difficulty. She could also get up from a chair without issue, had 5/5 grip strength bilaterally, and could tandem walk. She could also heel/toe walk, but it was difficult. (Tr. 632-636).

State reviewing physicians determined initially that Claimant had the RFC to perform light work with no manipulative or postural limitations. (Tr. 81-83). On reconsideration, the reviewing physician found, despite noting the addition of a heart valve issue, that Claimant could perform medium work, with no additional limitations. (Tr. 99-

100). Reviewing physicians determined initially and on review that Claimant's mental impairments were mild and non-severe. (Tr. 78-79, 97-98).

In his written opinion, the ALJ summarized Claimant's hearing testimony and the medical evidence in the record, including the longitudinal record of objective testing, and the numerous consultative examinations prior to and after the alleged onset date. The ALJ stated that he was "partially persuaded" by the opinions of Dr. Dulowski, Dr. Horton, Dr. Suddeth, Dr. LaGrand, Dr. Riazuddin, and APRN Sullivan, but noted the ones conducted prior to the amended alleged onset date and that none of them contained a functional assessment. (Tr. 28-29). He found the state reviewing physician opinion of medium work unpersuasive, but that the opinion of Claimant's mental impairments as non-severe was persuasive. (Tr. 29-30). He then determined Claimant was not disabled. (Tr. 30-31).

Claimant argues that the ALJ wholly failed to properly assess her RFC in multiple ways. The Court agrees. An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2, 5 (D. Kan. Sept. 11, 2013) ("[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC

findings.") (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp 2d 1175, 1187 (D. Kan. 2003)). Here the ALJ has connected no evidence in the record to instruct this Court as to how the stated RFC accounts for her impairments, which impairments he considered in formulating the RFC, and how all of Claimant's impairments affected the RFC. This is error because the ALJ is required to consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [Claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1523)); *see also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted]. The evaluation of her impairments in combination is particularly important in this case, as several physicians suggest additional limitations related to mental impairments yet the ALJ failed to discuss their exclusion from the RFC. *See Guerra v. Astrue*, 918 F. Supp. 2d 1180, 1188 (D. Kan. 2013). ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his

RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review."); *see also Crane v. Kijakazi*, 2021 WL 4270135, at *3 (E.D. Okla. Aug 31, 2021) ("Because the ALJ failed to account for the claimant's documented shoulder impairments . . . the RFC does not wholly account for his impairments."). Additionally, this reflects a failure to assess the combined effect of all Claimant's impairments – both severe and nonsevere – for her RFC even though "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7).

This same problem applies to the ALJ's analysis of the medical opinions in the record. Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical

source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ simply found most opinions partially persuasive largely based on each opinion's internal support, except to reject the opinion that Claimant could perform medium work and agree that Claimant's mental impairments were non-severe. He did not discuss consistency at all. (Tr. 28-30). The ALJ did not explain how any of these opinions supported the need for the additional RFC limitations he ultimately assigned (and not others) or how the additional ones in the RFC fully accounted for Claimant's physical impairments, much less her nonsevere impairments. Neither did he address the differences between the two

opinions from the state reviewing physicians, or why the nonsevere mental impairments did not call for any additional limitations based on the examining opinions. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]; *Clifton,* 79 F.3d at1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

While the RFC assessed in this case is more restrictive than that of some physician opinions, the ALJ fails to connect it to the evidence in the record and, as discussed above, fails to acknowledge multiple records indicative of additional/differing limitations. The ALJ did not explain how the prescribed additional postural limitations of occasional climbing ramps/stairs, stooping, kneeling, crouching, and crawling, accounted for Claimant's arthropathies and fibromyalgia, *in addition to* her GERD, migraines, obesity, as well as her depressive, bipolar, anxiety, and obsessive compulsive disorders. And as emphasized above, he failed to acknowledge, much less consider, the effect of all of the impairments in combination despite the well-known requirement that an ALJ must consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. Accordingly, the RFC as articulated is incapable of meaningful review. The Court must be able to follow the logic, and here it cannot. *See Jagodzinski*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record,

the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (citing *Brown*, 245 F. Supp. 2d at 1187). On remand, the ALJ should exercise discretion to determine whether the evidence is sufficient to formulate and RFC or whether additional development is warranted in order to conduct further analysis of *all* the evidence related to Claimant's impairments, both individually as well as any combined effect. If such analysis on remand results in any adjustment to Claimant's RFC, the ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 22nd day of September, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**